UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH ATKINSON; and KURT BRACKOB, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF TULARE; DETECTIVE WILLIAM SEYMOUR; and DOES 1-10, inclusive, <br><br> Defendants. | 1:09-cv-00789 OWW DLB <br><br> MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ ADJUDICATION; PLAINTIFFS' JOINT COUNTER-MOTION FOR SUMMARY ADJUDICATION OF ISSUES; AND DEFENDANTS' EX PARTE APPLICATION. <br><br> (DOCS. 41, 48, 54-3) |

I.    **INTRODUCTION**

Plaintiffs Beth Atkinson and Kurt Brackob ("Plaintiffs") proceed with this action against Defendants County of Tulare ("Defendant County"), Detective William Seymour ("Defendant Seymour"), and Does 1-10 (collectively, "Defendants"), alleging (1) civil rights violations pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the Constitution; (2) failure to provide medical care; (3) negligence; and (4) battery.

Before the court are: Defendants' Motion for Summary Judgment/Adjudication (Doc. 41); Plaintiffs' Joint Counter-Motion for Summary Adjudication of Issues (Doc. 48); and Defendants' Ex Parte Application (Doc. 54-3).[1] Plaintiffs filed a supplemental opposition (Doc. 59), to which Defendants replied (Doc. 61).

---

[1] Defendants also filed an Objection and Motion to Strike (Doc. 54-2), which will be addressed separately with other motions in limine.

1

II.  <u>FACTUAL BACKGROUND</u>

A.  <u>Undisputed Facts</u>

1.  <u>The Incident</u>

On September 12, 2008, Defendant Seymour, an eighteen-year veteran of the Tulare County Sheriff's Department, was assigned to the South End detective division. Defendants' Undisputed Material Facts ("DUMF"), Doc. 42, ¶¶ 1-2. Prior to the incident, Defendant Seymour had been investigating several burglaries and other crimes. DUMF ¶¶ 1-3.

Defendant Seymour was driving north on Highway 65 and saw Zachary Atkinson driving a motorcycle in the opposite direction. DUMF ¶ 8. The motorcycle caught his attention because it was similar to one that was reported stolen. DUMF ¶ 9. Defendant Seymour made a U-turn to follow Mr. Atkinson and eventually caught up with him. DUMF ¶ 10. Mr. Atkinson pulled into the turn lane to make a left turn onto North Grand Avenue. DUMF ¶ 11. Defendant Seymour was in an unmarked car, in plain clothes, and did not activate lights or sirens. DUMF ¶ 13. Mr. Atkinson stopped at the red light, then turned left onto North Grand Avenue while the light was still red. DUMF ¶ 14. Detective Seymour advised dispatch of his location and requested backup. DUMF ¶ 15. After the traffic signal changed to green, Detective Seymour turned left onto North Grand Avenue. DUMF ¶ 16.

Mr. Atkinson pulled off the road onto a dirt shoulder and came to a stop on the north side of the road. DUMF ¶ 17.

2

Detective Seymour pulled his vehicle onto the shoulder of the road and approached Mr. Atkinson. DUMF ¶ 18. Detective Seymour told dispatch he was stopped and updated his location. Plaintiffs' Additional Material Facts ("PAMF"), Doc. 54-1, ¶ 78. Detective Seymour thought that the backup units he had requested were on the way. PAMF ¶ 75.

Detective Seymour intended to just talk to Mr. Atkinson until additional units arrived. PAMF ¶ 79. Detective Seymour did not intend to arrest Mr. Atkinson by himself. PAMF ¶ 80. Defendant Seymour never told Mr. Atkinson that he was under arrest. DUMF ¶ 20; PAMF ¶ 86.

When he walked up to Mr. Atkinson, Detective Seymour identified himself as a peace officer and asked to see identification or registration documents for the motorcycle. DUMF ¶ 19. Mr. Atkinson responded that he had some papers. PAMF ¶ 83. In Detective Seymour's experience, people stopped on motorcycles sometimes have papers in their pockets. PAMF ¶ 84. Detective Seymour saw Mr. Atkinson reach into his left front pocket with his left hand. DUMF ¶ 21. Detective Seymour told Mr. Atkinson to keep his hands out of his pockets. DUMF ¶ 22. Detective Seymour never talked to Mr. Atkinson about the stolen motorcycle. PAMF ¶ 85.

Mr. Atkinson started the engine of the motorcycle and attempted to drive away. According to eyewitness Colby Harder,

3

almost immediately after Mr. Atkinson began to drive the
motorcycle, Detective Seymour initiated a "headlock." PAMF ¶ 97.
Atkinson had moved the motorcycle a foot before Seymour applied
the headlock. PAMF ¶ 98.

From that time through Defendant Seymour's shooting of Mr.
Atkinson, the facts are mostly disputed (see below).

Because of the strength Mr. Atkinson exhibited during
Detective Seymour's physical struggle with him, Detective Seymour
thought that Mr. Atkinson could be under the influence of a
controlled substance. DUMF ¶ 33. After the struggle, Detective
Seymour felt a significant pain in his side and right arm. DUMF ¶
34. Detective Seymour later learned that either the muscle or
tendon in his right bicep had snapped, requiring surgery and
several months off work. DUMF ¶ 36.

Within ten to fifteen seconds following the second shots,
Defendant Seymour called dispatch and requested an ambulance,
which arrived within five to ten minutes. DUMF ¶¶ 50-51. Mr.
Atkinson died of a single gunshot wound that entered his back and
did not exit. PAMF ¶ 170. Mr. Atkinson also sustained two
superficial gunshot wounds to the posterior left leg and on the
right buttock. PAMF ¶ 174.

2.  <u>County Policies</u>

The Tulare County Sheriff's Department ("TCSD") had numerous
policies, practices and procedures in effect at the time of the

4

incident. DUMF ¶ 53.

Policy 300 of the TCSD Policy Manual ("Manual") concerns the use of force. DUMF ¶ 53; Doc. 41, Ex. A. Section 300.2 of the Manual states that deputies may use force when it appears necessary, given the facts and circumstances perceived by the deputy at the time of the event, to effectively bring an incident under control. DUMF ¶ 53; Doc. 41, Ex. A. Section 300.2.5 of the Manual discusses carotid restraints and provides:

> The proper application of the carotid restraint hold by a trained deputy may be effective in quickly restraining a violent individual [sic] however due to the potential for injury, the carotid restraint hold may only be applied under the following conditions: . . . The carotid restraint may only be used when the deputy reasonably believes that such a hold appears necessary to prevent serious injury or death to a deputy or other person.

*Id.* Section 300.3 of the Manual discusses deadly force applications and provides that a deputy may use deadly force to protect himself/herself or others from what he/she reasonably believes would be an imminent threat of death or serious bodily injury. DUMF ¶ 54; Doc. 41, Ex. A. Section 300.4 of the Manual outlines the procedures that deputies must follow after the use of physical force, including documenting the incident and notifying supervisors. DUMF ¶ 55; Doc. 41, Ex. A. Section 300.5 of the Manual discusses supervisor responsibility following a reported use of force and provides protocol for supervisors to follow after there has been a reported application of force, including investigating the incident and notifying superiors if

5

it is determined that the application of force is not within policy. DUMF ¶ 56; Doc. 41, Ex. A.

Policy 302 of the Manual establishes a process to review the use of deadly force by deputies. DUMF ¶ 57; Doc. 41, Ex. B. Policy 304 of the Manual sets forth the department's shooting policy: Section 304.1.1 provides guidelines for the use of a firearm, and Section 304.1.4 addresses when, how, and to whom a report must be made regarding the discharge of a firearm. DUMF ¶ 58; Doc. 41, Ex. C. Policy 310 of the Manual establishes the procedures for investigating incidents in which a person is injured as a result of a police shooting: Section 310.5 addresses the investigation process and procedure, and Section 310.7 provides for an internal administrative investigation to determine conformance with departmental policy. DUMF ¶ 59; Doc. 41, Ex. D.

Policy 322 of the TCSD Policy Manual serves as a guideline for deputies in evaluating search and seizure issues. DUMF ¶ 60; Doc. 41, Ex. E.

Tulare County Sheriff's deputies are subject to the following training requirements: (1) graduation from a POST certified academy; (2) completion of an in-house orientation geared to teaching officers written policies and procedures, including use of force; (3) completion of an FTO program, a patrol training program designed to refine the training received

at the academy pertaining to the law of arrests, searches and seizures, use of force, and other tactical considerations; and (4) completion of a minimum 24 hours of continuing POST certified education every two years, as required by POST. DUMF ¶¶ 61-63. In addition, training is performed at roll call briefings, which may cover significant recent appellate court rulings. DUMF ¶ 64. Supervisors provide ongoing training in terms of continuing observations of the performances of subordinates, and providing performance evaluations and/or corrective training as needed. DUMF ¶ 65.

      B.   Disputed Facts

     It is disputed whether Mr. Atkinson was a suspect in the burglaries Detective Seymour was investigating immediately before the incident. Defendants contend that Mr. Atkinson was a suspect in the burglaries. DUMF ¶ 2. Defendants contend that Detective Seymour had a description of the perpetrator, which fit the general description of Mr. Atkinson. DUMF ¶ 4. Defendants contend that Detective Seymour also received information that Mr. Atkinson was attempting to sell a stolen Harley-Davidson motorcycle and that Detective Seymour was provided with a detailed description of the motorcycle. DUMF ¶ 6.

     Plaintiffs rejoin that Defendant Seymour's information tying Mr. Atkinson to the burglaries was vague, unreliable or fabricated to justify his use of excessive force. Pointing to

Defendants' Response to Plaintiffs' Requests for Admission, Set One, § 3, Plaintiffs assert that Defendants admit they do not have any documents to support the contention that Mr. Atkinson was possibly involved in the theft of handguns. Doc. 50, Ex. H, 4. Detective Seymour testified at his deposition that Detective Giefer told him that he had a telephone conversation with a person who "wanted to be a confidential informant for us," and said Mr. Atkinson was trying to sell him a motorcycle and some coins and jewelry. Doc. 49, Ex. A, 27. Detective Seymour did not remember when this conversation took place. *Id.* Detective Seymour does not remember what information he had that the motorcycle the confidential informant stated Mr. Atkinson was trying to sell was stolen. *Id.* at 29. Detective Seymour stated that the descriptions of the stolen merchandise "matched up to some extent" with information given to Detective Giefer, but he did not recall what those descriptions were. *Id.* at 29-30. Detective Seymour does not remember if there were any descriptions of the suspects or if anyone had been present when the items were stolen. *Id.* at 31. Detective Seymour stated that the only thing connecting Mr. Atkinson to the burglaries was that they were daytime burglaries in the same general area within the same time frame. *Id.* at 33. Detective Seymour states that Mr. Atkinson "possibly matched" the description of a white male in his 20s, 30s, and 40s involved in the robbery of marijuana plants involving a firearm. *Id.* at 33-

34. Plaintiffs' expert Richard Lichten opines that if Detective Seymour had an honest suspicion that Mr. Atkinson was involved in the burglary or robbery involving firearms, then the way he approached Mr. Atkinson was inconsistent with standard officer safety and standard police practices when confronting a possible armed felon. Doc. 51, ¶ 5.

Defendants contend that Detective Seymour was aware that Mr. Atkinson had a significant criminal history, including arrests involving violence against officers and resisting arrest. DUMF ¶ 5. Plaintiffs point to Detective Seymour's deposition testimony where he states that he ran Mr. Atkinson's name through a Tulare County local law enforcement database, and only knew about "some resisting arrest and some assaults-on-peace-officer" arrests, but he did not remember the year or disposition of any arrests. Doc. 49, Ex. A, 43-44. Detective Seymour testified that he could not remember whether Detective Lee stated that he had been injured in fights with Mr. Atkinson. *Id.* at 36.

Defendant Seymour claims that he had found a mug shot of Mr. Atkinson and printed it out. DUMF ¶ 7. Plaintiffs question the veracity of Defendant Seymour's statement because Defendant Seymour admitted that he did not know what happened to the mug shot or its current location. Doc. 50, Ex. G, 2.

After Mr. Atkinson attempted to drive off on his motorcycle, Defendants contend that Detective Seymour grabbed Mr. Atkinson

with his left arm around Mr. Atkinson's head and neck and hit the "kill" switch to stop the motorcycle. DUMF ¶ 24. Pointing at Detective Seymour's and Colby Harder's deposition, Plaintiffs contend that Detective Seymour put Mr. Atkinson in a carotid restraint using both arms. Doc. 49, Ex. A, 176; Doc. 49, Ex. D, 31.

Defendants contend that Mr. Atkinson restarted the motorcycle and again attempted to drive off, moving the motorcycle five to fifteen feet with Detective Seymour holding on to him. DUMF ¶ 25. Defendants assert that Detective Seymour again hit the kill switch and shut off the motorcycle. DUMF ¶ 26. Plaintiffs point out that an eye witness, Mr. Hardy, never saw Detective Seymour reach with either of his hands towards the handlebar area of the motorcycle. Doc. 49, Ex. D, 64. Plaintiffs contend that there was only one movement of the motorcycle, not two, but their evidence does not support this contention.

Defendants contend that Detective Seymour and Mr. Atkinson both fell to the ground to the right side of the motorcycle. DUMF ¶ 27. Pointing to Detective Seymour's videotaped interview, Plaintiffs contend that they did not fall; rather, Detective Seymour pulled Mr. Atkinson off the motorcycle. Doc. 50, Ex. C.

Defendants contend that Mr. Atkinson fell on top of Detective Seymour. DUMF ¶ 28. Pointing to Mr. Atkinson's deposition, Plaintiffs contend that Detective Seymour testified

that Mr. Atkinson fell to Detective Seymour's left (Doc. 49, Ex. A, 105) and that when they fell, their bodies were "side by side" (*Id.* at 109).

Defendants contend that while on his stomach, Detective Seymour felt movement on his right hip, where he kept his gun holstered. DUMF ¶ 29. Defendants contend that Detective Seymour looked down and saw Mr. Atkinson's hand on his gun, trying to take his gun from its holster. DUMF ¶ 30. Plaintiffs argue that it is possible the contact with Detective Seymour's gun never occurred. Mr. Harder witnessed the encounter, except for ten seconds, and stated that he did not see Mr. Atkinson make any movements of his body towards Detective Seymour. Doc. 49, Ex. D, 63. Pointing to Detective Seymour's Responses to Plaintiffs' Requests for Admission Set One, Plaintiffs argue that Detective Seymour did not deny that there were no fingerprints or DNA connecting Mr. Atkinson to his gun or holster; however, Defendants denied these requests for admission. Doc. 50, Ex. H, 5-7.

Defendants allege that Detective Seymour and Mr. Atkinson fought over Detective Seymour's gun, but Detective Seymour was able to gain control of it. DUMF ¶ 31. Plaintiffs assert that Mr. Atkinson never gained control of the gun and tried to pull his hand away while Detective Seymour was trying to keep his hand on his gun. Doc. 49, Ex. A, 112. Plaintiffs also state that

11

Detective Seymour testified that he had a retention holster, which had a mechanism to lock the gun in place so it would not come out. *Id*. at 50-51.

Defendants contend that Detective Seymour did not know whether the sharp pain in his right side was because he had been punched, stabbed, or shot. DUMF ¶ 35. In Defendants' cited deposition testimony, Detective Seymour states that he did not know whether the pain in his right side was "from a punch or a stab or what that was." Doc. 49, Ex. A, 120. Plaintiffs assert that Detective Seymour conceded that he had just fallen to the ground and could have sustained the injury from the ground, the motorcycle's handlebars, or falling on a rock. *Id.* at 120, 177-178. Detective Seymour stated that he did not hear a gunshot, so he knew that he had not been shot. *Id.* at 152.

The parties dispute the facts of the shooting. Defendants contend that while Detective Seymour was conducting a mental inventory of his injuries, he realized that Mr. Atkinson had stood up and moved out of his line of sight. DUMF ¶ 37. Defendants contend that Detective Seymour then saw that Mr. Atkinson was standing within a few feet of him, and he had his left hand in his pocket. DUMF ¶ 38. Defendants contend that Detective Seymour raised up on his knee, drew his weapon, pointed it at Mr. Atkinson, and told him to put his hands up and to take his hands out of his pocket.  DUMF ¶ 39. Defendants contend that

Mr. Atkinson did not comply, but turned his back to Detective Seymour, and had his hand still in his pocket. DUMF ¶ 40. Defendants contend that Detective Seymour was aiming at Mr. Atkinson's hand and observed him making a movement like he was turning around. DUMF ¶ 41. Defendants contend that, fearful that Mr. Atkinson was trying to remove a firearm, turn around and shoot him, Detective Seymour fired. DUMF ¶ 42. Defendants assert that Detective Seymour did not know if the shot made contact (DUMF ¶ 43); that Mr. Atkinson moved out of Detective Seymour's line of sight, but came back into view within two or three seconds (DUMF ¶ 44); and that Detective Seymour thought that Mr. Atkinson, who was now five to fifteen feet away, was coming back to kill him. DUMF ¶ 45. Defendants argue that Detective Seymour stood up and pointed his weapon at Mr. Atkinson, who was facing away from him. DUMF ¶ 46. Aiming center mass at Mr. Atkinson's back, Detective Seymour could see Mr. Atkinson's left hand was still in his left front pocket. DUMF ¶ 47. Defendants contend that Detective Seymour believed Mr. Atkinson was starting to turn towards him to draw a firearm. Defendants maintain that Detective Seymour fired once or twice. DUMF ¶ 48. Defendants contend that Mr. Atkinson got on the ground and Detective Seymour covered him with his weapon until other deputies arrived on the scene to assist him. DUMF ¶ 49.

Plaintiffs' version of the shooting differs. Plaintiffs

point to Detective Seymour's deposition testimony, where he states that when Mr. Atkinson first got off the ground, Mr. Atkinson did not say anything to Detective Seymour, did not verbally threaten him, did not attempt to charge or jump on top of Detective Seymour, and did not try to go after Detective Seymour's gun. Doc. 49, Ex. A, 125. Plaintiffs contend that Detective Seymour did not have time to conduct a "mental inventory" of his injuries and that immediately after Mr. Atkinson got up and started to sprint away, Detective Seymour rose to a shooting stance and shot Mr. Atkinson in the back. Doc. 49, Ex. B, 63; Doc. 49, Ex. C, 12-15. Heraclio Aguilar testified that Detective Seymour fired three shots in rapid succession, and that Mr. Atkinson started falling immediately after the first shot. Doc. 49, Ex. C, 13. Plaintiffs assert that eyewitnesses Mr. Harder and Manuel Escalera never saw Mr. Atkinson turn. Doc. 49, Ex. B, 69; Doc. 49, Ex. D, 74. Plaintiffs also point to Mr. Harder's deposition to contradict Defendants' contention that Mr. Atkinson ever had his hand in his left pocket. Doc. 49, Ex. D, 40. Pointing to the deposition testimony of Mr. Escalera and Mr. Aguilar, Plaintiffs contend that Mr. Atkinson never stood stationary and Detective Seymour never told Mr. Atkinson to put his hands up and to take his hands out of his pocket. Doc. 49, Ex. B, 63; Doc. 49, Ex. C, 12-15.

## II.   LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the

non-moving party's case. *Id.*

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(e). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

### III. <u>ANALYSIS</u>

A.   <u>Defendants' Motion for Summary Judgment/Adjudication</u>

1.   <u>Plaintiffs' Standing</u>

Defendants contend that Plaintiffs have not fulfilled the procedural requirements of California Civil Procedure Code § 377.32[2] and do not have standing to assert claims as successors

_____

[2] California Civil Procedure Code § 377.32 provides:
(a) The person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest under this article, shall execute and file an affidavit or a declaration under

16

1   in interest to Mr. Atkinson. In response, Plaintiffs filed the

2   declaration of Mr. Brackob, Mr. Atkinson's father and successor

3   in interest (Doc. 42), attaching (1) Mr. Atkinson's birth

4   certificate listing Plaintiffs as Mr. Atkinson's parents (Doc.

5   42, Ex. A) and (2) Mr. Atkinson's death certificate (Doc. 42, Ex.

6   B). Plaintiffs, Mr. Atkinson's parents, have satisfied the

7   procedural standing prerequisites to assert claims as Mr.

8   Atkinson's successors in interest. Defendants' motion for summary

9   judgment due to Plaintiffs' lack of standing is DENIED.

10

11

12          2.    <u>First Claim for Relief: Unreasonable Search and
                  Seizure – Unlawful Arrest (42 U.S.C. § 1983)
13                Against Defendant Seymour</u>

14          Plaintiffs no longer intend to pursue the claim that Mr.

15  ────────────────────────────────────────────────────────────

16  penalty of perjury under the laws of this state stating all of the following:
         (1) The decedent's name.
17       (2) The date and place of the decedent's death.
         (3) "No proceeding is now pending in California for administration of the
18  decedent's estate."
         (4) If the decedent's estate was administered, a copy of the final order
19  showing the distribution of the decedent's cause of action to the successor in
    interest.
20       (5) Either of the following, as appropriate, with facts in support thereof:
            (A) "The affiant or declarant is the decedent's successor in interest
21  (as defined in Section 377.11 of the California Code of Civil Procedure) and
    succeeds to the decedent's interest in the action or proceeding."
22          (B) "The affiant or declarant is authorized to act on behalf of the
    decedent's successor in interest (as defined in Section 377.11 of the
23  California Code of Civil Procedure) with respect to the decedent's interest in
    the action or proceeding."
         (6) "No other person has a superior right to commence the action or
24  proceeding or to be substituted for the decedent in the pending action or
    proceeding."
25       (7) "The affiant or declarant affirms or declares under penalty of perjury
    under the laws of the State of California that the foregoing is true and
26  correct."
    (b) Where more than one person executes the affidavit or declaration under
27  this section, the statements required by subdivision (a) shall be modified as
    appropriate to reflect that fact.
28  (c) A certified copy of the decedent's death certificate shall be attached to
    the affidavit or declaration.

                                    17

Atkinson was detained without reasonable suspicion and arrested without probable cause in violation of the Fourth Amendment. Defendants' motion for summary judgment on the First Claim for Relief is GRANTED as to Plaintiff's Fourth Amendment claim for unreasonable detention and arrest without probable cause.

>    3.    **First Claim for Relief: Unreasonable Search and Seizure — Excessive Force (42 U.S.C. § 1983) Against Defendant Seymour**

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) the violation of a right secured by the Constitution or a federal law, and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Excessive force claims are examined under the Fourth
Amendment's prohibition against unreasonable seizures. *Graham v.
Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865 (1989). Fourth
Amendment analysis requires balancing of the quality and nature
of the intrusion on an individual's interests against the
countervailing governmental interests at stake. *Id*. at 396. Use
of force violates an individual's constitutional rights under the
Fourth Amendment where the force used was objectively
unreasonable in light of the facts and circumstances confronting
them. *E.g., Id.* at 397. Excessive force inquiries require
balancing of the amount of force applied against the need for
that force under the circumstances. *Meredith v. Erath*, 342 F.3d
1057, 1061 (9th Cir.2003). "Because such balancing nearly always
requires a jury to sift through disputed factual contentions, and
to draw inferences therefrom . . . summary judgment or judgment
as a matter of law . . . should be granted sparingly" in cases
involving claims of excessive force. *Gregory v. Cnty. of Maui*,
523 F.3d 1103, 1106 (9th Cir. 2008) (quoting *Drummond v. City of
Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003)); *see also Smith v.
City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) ("We have held
repeatedly that the reasonableness of force used is ordinarily a
question of fact for the jury.") (quoting *Liston v. Cnty. of
Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).

a)  <u>Constitutional Violation</u>

Here, Defendant Seymour (1) either placed, or attempted to place, Mr. Atkinson in a carotid hold[3], pulling Mr. Atkinson off the motorcycle with his arms around Mr. Atkinson's neck, and (2) fatally shot Mr. Atkinson two to three times. Even by Defendants' account of the facts, the force used against Mr. Atkinson was severe and deadly. "[F]orce that creates a substantial risk of causing death or serious bodily injury" is deadly force. *Smith v. City of Hemet*, 394 F.3d at 693. The dissent to *City of Los Angeles v. Lyons*, 461 U.S. 95, 116-117, 103 S.Ct. 1660 (9th Cir. 1983) explains:

> It is undisputed that chokeholds pose a high and
> unpredictable risk of serious injury or death. Chokeholds
> are intended to bring a subject under control by causing
> pain and rendering him unconscious. Depending on the
> position of the officer's arm and the force applied, the
> victim's voluntary or involuntary reaction, and his state of
> health, an officer may inadvertently crush the victim's
> larynx, trachea, or thyroid. The result may be death caused
> by either cardiac arrest or asphyxiation.

The severe force Defendant Seymour used against Mr. Atkinson must be balanced against the need for that force. *Meredith v. Erath*, 342 F.3d at 1061.

The government's interest in the use of force is evaluated by examining the three core factors of *Graham v. Connor,* 490 U.S.

---

[3] Without citation to case law or other authority, Defendants attempt to carve out Defendant Seymour's carotid restraint of Mr. Atkinson from his other use of force and move for summary judgment on Plaintiffs' excessive force claim as to the carotid restraint alone. Because an excessive force inquiry requires examination of the totality of the circumstances, Defendants' motion for summary judgment on Plaintiffs' excessive force claim will be determined as to the totality of force Defendant Seymour used. *See Davis v. City of Las Vegas,* 478 F.3d 1048, 1055 (9th Cir. 2007).

386, 109 S.Ct. 1865 (1989): (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396). These factors are not exclusive; courts examine the totality of the circumstances and consider "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Bryan v. MacPherson*, 630 F.3d at 826 (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

There are material issues of disputed fact regarding the severity of Mr. Atkinson's crimes. It is undisputed that Mr. Atkinson ran a red light in front of Detective Seymour, but "[t]raffic violations generally will not support the use of a significant level of force." *Bryan v. MacPherson*, 630 F.3d at 828. Detective Seymour also claims that he reasonably believed Mr. Atkinson was a suspect in several burglaries he was investigating, including one involving stolen firearms. "The government has an undeniable legitimate interest in apprehending criminal suspects, and that interest is even stronger when the criminal is . . . suspected of a felony, which is by definition a crime deemed serious by the state." *Miller v. Clark Cnty*., 340 F. 3d 959, 964 (9th Cir. 2003).

1
2     Plaintiffs rejoin that Detective Seymour's information tying
3   Mr. Atkinson to the burglaries were vague, unreliable, or
4   fabricated to justify his use of excessive force. Plaintiffs
5   provide the following evidence: (1) in Defendants' Response to
6   Plaintiffs' Requests for Admission, Set One, § 3, Defendants
7   admit they do not have any documents to support the contention
8   that Mr. Atkinson was possibly involved in the theft of handguns
9   (Doc. 50, Ex. H, 4); (2) Detective Seymour stated that Detective
10  Giefer told him he had a telephone conversation with a person who
11  "wanted to be a confidential informant for us," and said Mr.
12  Atkinson was trying to sell him a motorcycle and some coins and
13  jewelry, but does not remember when that conversation occurred or
14  what information he had that the motorcycle Mr. Atkinson was
15  trying to sell was stolen (Doc. 49, Ex. A, 27, 29); (3) Detective
16  Seymour stated that the descriptions of the stolen merchandise
17  "matched up to some extent" with information given to Detective
18  Giefer, but he did not recall what those descriptions were (*Id.*
19  at 29-30); (4) Detective Seymour does not remember if there were
20  any descriptions of the burglary suspects or if anyone had been
21  present when the items were stolen (*Id.* at 31); (5) Detective
22  Seymour stated that the only thing connecting Mr. Atkinson to the
23  burglaries was that they were daytime burglaries in the same
24  general area within the same time frame (*Id.* at 33); and (6)
25  Detective Seymour states that Mr. Atkinson "possibly matched" the
26
27
28

22

description of a white male in his 20s, 30s, and 40s involved in the robbery of marijuana plants involving a firearm (*Id.* at 33-34). Plaintiffs' expert Richard Lichten opines that if Detective Seymour had an honest suspicion that Mr. Atkinson was involved in the burglary or robbery involving firearms, then the way he approached Mr. Atkinson was inconsistent with standard officer safety and standard police practices when confronting a possible armed felon. Doc. 51, ¶ 5.

Credibility determinations cannot be made on a motion for summary judgment; rather, Plaintiffs' evidence must be believed and all inferences must be drawn in their favor. *Anderson*, 477 U.S. at 255. A reasonable trier of fact could find that Detective Seymour did not believe Mr. Atkinson was a suspect in the robberies and/or fabricated the story to justify his use of excessive force. There are at least six separate credibility disputes raised regarding Detective Seymour's account.

The most significant factor under *Graham* is whether the suspect poses an immediate threat to the safety of the officers or others. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). An officer's actions must be examined "from the perspective of a reasonable officer on the

23

scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Plaintiffs assert that at the point when Detective Seymour instituted the carotid chokehold on Mr. Atkinson and when Detective Seymour shot Mr. Atkinson, Mr. Atkinson was attempting to flee the scene and did not pose an immediate threat to Detective Seymour or the public. Defendants assert that Detective Seymour knew Mr. Atkinson was a suspect in several burglaries in which firearms were stolen, and "knew" Mr. Atkinson was potentially armed. Whether Detective Seymour reasonably believed these facts is disputed. Defendants also assert that while Detective Seymour and Mr. Atkinson were on the ground, Mr. Atkinson had been physically engaged with Detective Seymour trying to obtain control over Detective Seymour's gun. Plaintiffs point to the eye witness testimony of Mr. Harder, who witnessed the entire encounter except 10 seconds, and who did not see Mr. Atkinson make any movements of his body towards Detective Seymour. Doc. 49, Ex. D, 63. Defendants also contend that Mr. Atkinson had his left hand in his pocket, and that Detective Seymour was fearful that Mr. Atkinson was attempting to remove a firearm from his pocket, turn around, and shoot him. Eyewitness Mr. Harder testified that Mr. Atkinson never had his hand in his pocket. Doc. 49, Ex. D, 40. Drawing all inferences in Plaintiffs' favor, a reasonable trier of fact could find that Mr. Atkinson

did not pose an immediate threat to the safety of Detective Seymour or the public.

At both times when Detective Seymour used force on Mr. Atkinson, Mr. Atkinson was attempting to evade Detective Seymour. Plaintiffs contend that because Mr. Atkinson was not seized and was not being arrested, he was not "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. There are material issues of fact regarding whether Mr. Atkinson was seized and was therefore evading arrest. The forensic evidence, however, supports that Mr. Atkinson was shot in the back as he was running away from Detective Seymour.

The absence of any warning or an order to halt is also a factor to weigh in determining excessive force. *Deorle*, 272 F.3d at 1283-1284. Officers should give warnings, when feasible, if the use of force in effecting seizure may result in serious injury, and the giving of a warning or failure to do so is a factor to be considered in determining the objective reasonableness of an officer's use of force. *Id.* at 1284; *see also Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("whenever practicable, a warning must be given before deadly force is employed"). Here, it is undisputed that Detective Seymour did not give Mr. Atkinson any warning before placing him into a carotid hold. It is disputed whether Detective Seymour gave Mr. Atkinson any warning before shooting him. Defendants

contend that before shooting Mr. Atkinson, Detective Seymour told Mr. Atkinson to put his hands up and to take his hands out of his pocket. Pointing to the deposition testimony of Mr. Escalera and Mr. Aguilar, Plaintiffs contend that Mr. Atkinson never stood stationary and Detective Seymour never told Mr. Atkinson to put his hands up and to take his hands out of his pocket. Doc. 49, Ex. B, 63; Doc. 49, Ex. C, 12-15. Drawing all inferences in Plaintiff's favor, this factor weighs in favor of finding excessive force.

Detective Seymour's failure to use alternative tactics also militates against the conclusion the use of force was reasonable. Police are required to consider whether alternative tactics are available to affect an arrest. *Bryan v. MacPherson*, 630 F.3d at 831. It is undisputed that Detective Seymour had told dispatch of his location and thought that backup units were on their way. In a similar situation, the Ninth Circuit explained:

> Objectively, however, there were clear, reasonable, and less intrusive alternatives. [The officer] knew additional officers were en route to the scene. He was, or should have been, aware that the arrival of those officers would change the tactical calculus confronting him, likely opening up additional ways to resolve the situation without the need for an intermediate level of force.

*Id.* This factor weighs in favor of finding excessive force.

There are material factual disputes that preclude summary judgment on whether Detective Seymour's use of force was excessive under the totality of the circumstances. Where facts

are disputed, their resolution and determinations of credibility are "manifestly in the province of a jury." *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1110 (9th Cir. 2004) (quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002). Viewing the facts in the light most favorable to Plaintiffs, a reasonable fact finder could find that the force Detective Seymour used was excessive compared to the government interests at stake.

### b)   Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). The protection of qualified immunity applies regardless of whether the government official makes an error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284 (2004) (KENNEDY, J., dissenting)). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law ...." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is

erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985) (emphasis deleted).

The qualified immunity inquiry has two prongs: (1) "whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson v. Callahan*, 129 S.Ct. at 815-816). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *Id*. at 201. "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 129 S.Ct. at 823. Where there is a dispute in the underlying evidence, qualified immunity cannot be granted. *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.").

1    Accepting that Detective Seymour violated Mr. Atkinson's

2  Fourth Amendment rights, the next inquiry is whether the right

3  was "clearly established" on the date of the incident. *Pearson v.*

4  *Callahan*, 129 S.Ct. at 814. Defendants argue that no authority

5  similar to the facts and circumstances of this case put Detective

6  Seymour on notice that his conduct was unlawful. "Even where

7  there is no federal case analyzing a similar set of facts, a

8  plaintiff may nonetheless demonstrate that a reasonable officer

9  would have known that the force he used was excessive." *Davis v.*

10  *City of Las Vegas*, 478 F.3d 1048, 1056 (9th Cir. 2007).

11

12    The Supreme Court has clearly stated the rule applicable to

13  the use of deadly force to prevent a felony suspect's escape:

14
        The use of deadly force to prevent the escape of all felony
15      suspects, whatever the circumstances, is constitutionally
        unreasonable. It is not better that all felony suspects die
16      than that they escape. Where the suspect poses no immediate
        threat to the officer and no threat to others, the harm
17      resulting from failing to apprehend him does not justify the
        use of deadly force to do so.
18

19  *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694 (1985). In

20  addition, "[i]n assessing the state of the law at the time of

21  [the] arrest, we need look no further than *Graham*'s holding that

22  force is only justified when there is a need for force."

23  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007).

24  Viewing the facts in the light most favorable to Plaintiffs, a

25  reasonable fact finder could find that these clear principles

26  would have put a reasonable officer on notice that the force used

27

28

by Detective Seymour was unnecessary and excessive.

In addition, a police department's "training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable". *Drummond v. City of Anaheim,* 343 F.3d 1052, 1062 (9th Cir. 2003). Section 300.2.5 of Defendants' Manual provides that "due to the potential for injury, the carotid restraint hold may only be applied . . . when the deputy reasonably believes that such a hold appears necessary to prevent serious injury or death to a deputy or other person." Doc. 41, Ex. A. Section 300.3 of the Manual discusses deadly force applications and provides that a deputy may use deadly force to protect himself/herself or others from what he/she reasonably believes would be an imminent threat of death or serious bodily injury. DUMF ¶ 54; Doc. 41, Ex. A. Defendants' training materials put Detective Seymour on notice that a carotid restraint or deadly force cannot be used unless there is imminent threat of death or serious bodily injury to the officers or others. If believed, the eye witness testimony and Detective Seymour's imperfect memory leave in dispute whether deadly, or any, force was necessary.

Defendants' motion for summary judgment on the issue of excessive force in the First Claim for Relief on the grounds of

qualified immunity is DENIED.

### 4.   Second Claim for Relief: Failure to Provide Medical Care (42 U.S.C. § 1983) Against Defendant Seymour

Plaintiffs have abandoned their claim for failure to provide medical care. Defendants' motion for summary judgment on the Second Claim for Relief is GRANTED.

### 5.   Third Claim for Relief: Substantive Due Process (42 U.S.C. § 1983) Against Defendant Seymour

#### a)   Constitutional Violation

"The Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child." *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). Official conduct that "shocks the conscience" in depriving a parent of such interest is cognizable as a due process violation. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). In determining whether excessive force shocks the conscience, the first inquiry is "whether the circumstances are such that actual deliberation by the officer is practical." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (quoting *Porter v. Osborn*, 546 F.3d at 1137) (internal brackets omitted). Where actual deliberation is practical, an officer's "deliberate indifference" may suffice to shock the conscience. *Id.* If, however, an officer "makes a snap judgment because of an escalating situation, his conduct may only be found to shock the

conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* In *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008), the Ninth Circuit found that actual deliberation was not practical for an officer faced with an evolving set of circumstances over five minutes necessitating "fast action" and "repeated split-second decisions." *Id.* at 1139.

Here, the entire incident lasted only a few minutes. Because Detective Seymour made snap judgments without time for deliberation, his conduct will only shock the conscience if he acted "with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* at 1137.

Plaintiffs argue that a reasonable fact finder could find that Detective Seymour acted with a purpose to harm because he created the situation in which he unnecessarily resorted to deadly force. A "purely reactive decision to give chase" does not evidence an intention to "induce ... lawlessness, or to terrorize, cause harm, or kill." *Porter v. Osborn,* 546 F.3d at 1140 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 53, 118 S.Ct. 1708 (1998). A purpose to harm unrelated to legitimate law enforcement objectives is found where force is used against a suspect only to "teach him a lesson" or to "get even." *Id.* at 1141. "When an officer creates the very emergency he then resorts to deadly force to resolve, he is not simply responding to a preexisting situation. His motives must then be assessed in light

of the law enforcement objectives that can reasonably be found to have justified his actions." *Id.*

Drawing all inferences in favor of Plaintiffs' version of the facts, a rational jury could not find that Detective Seymour acted with a purpose to harm unrelated to legitimate law enforcement objectives. There is no evidence to suggest that Detective Seymour had any motive other than law enforcements objectives in his attempts to detain Mr. Atkinson. There is no evidence of specific animus against Mr. Atkinson.

### b)  Qualified Immunity

There is no evidence that Detective Seymour violated Plaintiffs' Fourteenth Amendment rights. Detective Seymour is entitled to qualified immunity. Defendants' motion for summary judgment on the Third Claim for Relief is GRANTED.

### 6.  Fourth Claim for Relief: Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983) Against Defendant County

A municipality may be held liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 463 U.S. 658, 694, 98 S.Ct. 2018 (1978). To prevail under a Section 1983 claim against a local government, a plaintiff must show: (1) he or she was deprived of a constitutional right; (2) the local government had a policy; (3)

the policy amounted to a deliberate indifference to his or her

constitutional right; and (4) the policy was the moving force

behind the constitutional violation. *Burke v. Cnty. of Alameda*,

586 F.3d 725, 734 (9th Cir. 2009). There are three ways to show a

municipality's policy or custom:

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting

*Ulrich v. S.F.*, 308 F.3d 968, 984-85 (9th Cir. 2002)).

Plaintiffs contend that the County ratified Detective

Seymour's deprivations of Mr. Atkinson's Fourth Amendment rights.

The Ninth Circuit has found a single constitutional violation

sufficient to establish municipal policy where the final

policymaker ratified a subordinate's actions. *Christie v. Iopa*,

176 F.3d 1231, 1238 (9th Cir. 1999). A policymaker's knowledge of

an unconstitutional act does not, by itself, constitute

ratification. *Id.* at 1239. Rather, a plaintiff must prove that

"the authorized policymakers approved a subordinate's decision

and the basis for it." *Id.* (quoting *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988)). A

policymaker's mere refusal to overrule a subordinate's completed

act does not constitute ratification. *Iopa*, 176 F.3d at 1239

(citing *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 781 (9th

Cir. 1997) ("To hold cities liable under Section 1983 whenever

policymakers fail to overrule the unconstitutional discretionary

acts of subordinates would simply smuggle *respondeat superior*

liability into Section 1983.") (citation and internal quotation

marks omitted)). "Ordinarily, ratification is a question for the

jury." *Iopa*, 176 F.3d at 1238-1239.

Defendants argue that Plaintiffs' *Monell* claim fails because

the First Amended Complaint does not allege a custom, policy,

practice, or failure to take remedial steps under a theory of

ratification. It is well established in the Ninth Circuit that an

allegation based on nothing more than a bare averment that an

official's conduct conformed to official policy, custom or

practice suffices to state a *Monell* claim under Section 1983. *See*

*Shah v. Cnty. of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Karim*

*Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).

Section 39(d) of the First Amended Complaint alleges:

> By having and maintaining an unconstitutional custom and
> practice of using excessive force, including deadly force
> and detaining and arresting individuals without probable
> cause. The custom of practice of using deadly force by
> COUNTY and DOE SUPERVISORS was done with a deliberate
> indifference to individuals' safety and rights.

Doc. 5, 9. Plaintiffs' *Monell* claim is sufficiently alleged.

Defendants also contend that Plaintiffs' *Monell* claim fails

as a matter of law Plaintiffs have not asserted any claim against

a final policymaker in either his or her official or individual capacity. Asserting an action against a final policymaker in his or her official capacity, however, "represent[s] only another way of pleading an action against an entity of which an officer is an agent.' . . . [T]he real party in interest is the entity." *Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099 (1985)). The First Amended Complaint names the County of Tulare as a defendant.

Defendants further contend that there is no evidence of ratification by the final policymaker, Tulare County Sheriff Bill Wittman[4]. Defendants assert that there is no evidence Sheriff Wittman, or his delegate, played any role in or had any knowledge of the investigation into Detective Seymour's conduct, made any deliberate choice to endorse Detective Seymour's conduct, or ratified any particular bases for Detective Seymour's conduct. Plaintiffs rejoin that there is sufficient evidence to create a triable issue that Sheriff Wittman or his delegate ratified Detective Seymour's actions.

Section 302.2 of the Tulare County Sheriff's Department Policy Manual provides:

---

[4] **The issue of who is a final policymaker is a question of state law.** *Delia v. City of Rialto*, 621 F.3d 1069, 1082 (9th Cir. 2010). Citing *Brewster v. Shasta Cnty.*, 275 F.3d 803, 807 (9th Cir. 2001), Plaintiffs contend that the Tulare County Sheriff Bill Wittman, or his delegate, acted as the final policymaker in ratifying Detective Seymour's use of force. See *id.* at 812 (concluding that the Shasta County Sheriff acts as a final policymaker for the County when investigating crime within the County, and affirming the district court's holding that the County may be subject to liability under 42 U.S.C. § 1983). Defendants do not contest that Sheriff Wittman is the final policymaker.

1    **302.2 REVIEW BOARD**

2    **The Tulare County Sheriff's Department is charged with the**
3    **important responsibility of objectively evaluating the use**
     **of deadly force. It is the policy of this department to**
4    **convene a Use of Deadly Force Review Board when the use of**
     **deadly force by an employee results in injury or death to a**
5    **person.**

6    **The Use of Deadly Force Review Board will also review the**
     **circumstances surrounding every accidental or intentional**
7    **discharge of a firearm, whether the employee is on or off**
     **duty, excluding range training or recreational use.**
8

9    **The Sheriff may convene the Use of Deadly Force Review Board**
     **to investigate the circumstances surrounding any use of**
10   **force incident.**

11   Doc. 41-4, 12. Section 302.2.2 of the Policy Manual further

12   provides:

13
     **A finding will be the consensus of the Board. After the**
14   **Board has concluded, the board will submit written findings**
     **to the Sheriff. After review by the Sheriff, a copy of the**
15   **findings will be forwarded to the involved employee's**
     **Division Commander for review and appropriate action.**
16

17   *Id.* Plaintiffs provide the result of an Internal Affairs

18   investigation and a letter to Detective Seymour from the County

19   of Tulare Sheriff's office discussing the results of the Internal

20   Affairs investigation (filed under seal). Richard Lichten, an

21   expert in law enforcement practices, opines:

22
     **The shortcomings and unresolved issues of the internal**
23   **investigation should have been apparent to the Sheriff and**
     **his chain of command. That they were ignored indicates an**
24   **effort by the department to bend and ignore the evidence to**
     **a pre-determined conclusion that the death of Mr. Atkinson**
25   **was justified and within policy and law. In actuality, it**
     **should have been apparent to any reasonable decision-maker**
26   **under the facts of this case that the use of lethal force**
     **against Mr. Atkinson was never justified at any time during**
27   **this incident.**
28

Doc. 51, ¶ 14. Drawing all inferences in Plaintiffs' favor, Section 302.2.2 of the Policy requires Sheriff Wittman to review the Review Board's findings, the letter on Sheriff Wittman's letterhead confirming the results of the Internal Affairs Investigation is a notification with knowledge, and Mr. Lichten's opinion regarding the defects in the investigation, sufficiently create a triable issue of material fact that Sheriff Wittman or his delegate ratified Detective Seymour's use of force.

Finally, Defendants argue that Plaintiffs have not demonstrated that any policy was closely related to Plaintiffs' alleged injuries. Evidence that a final policymaker "ratified a decision that deprived plaintiffs of their constitutional rights would suffice for official liability" under Section 1983. *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991).

Defendants' motion for summary judgment on the Fourth Claim for Relief is DENIED.

> 7. <u>Fifth Claim for Relief: Negligence (California Government Code § 820 and California Common Law) & Sixth Claim for Relief: Battery (California Government Code § 820 and California Common Law) Against All Defendants</u>

> a) <u>Defendant County</u>

Plaintiffs state that they do not intend to pursue their claim for direct negligence against the County (as opposed to *respondeat superior* negligence). California does not follow *Monell* and imposes liability on counties under the doctrine of

38

respondeat superior for acts of county employees. Cal. Gov't Code § 815.2[5]. California Government Code § 815.2(a) provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). Under this provision, the Ninth Circuit held that a county was not immune from suit for several state law claims, including negligence and battery, based on its employee officers' use of excessive force. *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002).

There are material factual disputes regarding the reasonableness of Detective Seymour's use of force against Mr. Atkinson. Accepting Plaintiffs' version of the facts as true, Defendant County is not entitled to summary judgment on Plaintiffs' state law claims for negligence or battery against Detective Seymour. Defendants' motion for summary judgment on the Fifth Claim for Relief is GRANTED as to direct negligence and DENIED as to *respondeat superior* negligence. Defendants' motion

---

[5] California Government Code § 815.2 provides:

(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

39

for summary judgment on the Sixth Claim for Relief is DENIED.

b)    Defendant Seymour

Plaintiffs' claim for negligence and battery flow from the same facts as the alleged Fourth Amendment violation for excessive force and are measured by the same reasonableness standard of the Fourth Amendment. *See Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-73, 74 Cal.Rptr.2d 614 (1998); *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1102 n.6, 16 Cal.Rptr.3d 521 (2004). There are material factual disputes regarding the reasonableness of Defendant Seymour's actions. Accepting Plaintiffs' version of the facts as true, Defendant Seymour is not entitled to summary judgment on Plaintiffs' state law claim for battery. Defendants' motion for summary judgment on the Fifth and Sixth Claims for Relief as to Defendant Seymour is DENIED.

8.    Claim for Punitive Damages Against All Defendants

a)    Defendant County

Public entities are immune from punitive damages under 42 U.S.C. § 1983 and California law. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748 (1981) (holding municipalities immune from punitive damages under 42 U.S.C. § 1983); Cal. Gov't Code § 818 ("Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing

40

the defendant."). Plaintiffs concede their punitive damages claim against Defendant County cannot succeed as a matter of law. Defendants' motion for summary judgment on the punitive damages claim as to Defendant County is GRANTED.

### b)   Defendant Seymour

Punitive damages are recoverable in an action under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983). Under California law, punitive damages are authorized if a plaintiff can show by clear and convincing evidence that a defendant acted with oppression, fraud, or malice. Cal. Civ. Code § 3294(a).

There is sufficient evidence in the record to create a factual dispute regarding Defendant Seymour's intent and aims against Mr. Atkinson. Whether Plaintiffs are entitled to punitive damages against Defendant Seymour is a question for the jury. Defendants' motion for summary judgment on the punitive damages claim as to Defendant Seymour is DENIED.

### B.   Plaintiffs' Counter-Motion for Summary Adjudication of Issues (Doc. 47)

Plaintiffs move for summary adjudication of the following issues:

(1) until Defendant Seymour put Mr. Atkinson in a carotid restraint, Mr. Atkinson was not seized and was free to leave the consensual encounter;

(2) Defendant Seymour's carotid restraint constituted excessive force as a matter of law and Defendant Seymour is not entitled to qualified immunity; and

(3) Plaintiffs have standing to bring claims as successors-in-interest to Mr. Atkinson.

1.   Consensual Encounter Before Carotid Restraint

Plaintiffs contend that there are no material factual disputes that until Detective Seymour put Mr. Atkinson in a carotid restraint, Mr. Atkinson was not seized.

As a threshold matter, Defendants contend that the issue is moot because Plaintiffs are no longer pursuing a Fourth Amendment claim for unreasonable seizure. The issue of whether Mr. Atkinson was seized and was actively attempting to evade arrest by flight is pertinent to the Fourth Amendment inquiry for excessive force. *See Graham*, 490 U.S. at 396.

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870 (1980). "As long as the person to whom questions are put remains free to disregard the questions and walk away," there is no seizure. *Id.* at 554. "[T]he test for existence of a "show

42

of authority" is an objective one: not whether the citizen

perceived that he was being ordered to restrict his movement, but

whether the officer's words and actions would have conveyed that

to a reasonable person." *California v. Hodari D.*, 499 U.S. 621,

1551, 111 S.Ct. 1547 (1991). "The crucial test is whether, taking

into account all of the circumstances surrounding the encounter,

the police conduct would 'have communicated to a reasonable

person that he was not at liberty to ignore the police presence

and go about his business.'" *Florida v. Bostick*, 501 U.S. 429,

437, 111 S.Ct. 2382 (1991). Supreme Court case law "makes clear

that a seizure does not occur simply because a police officer

approaches an individual and asks a few questions." *Id.* at 434.

     Here, it is undisputed that Mr. Atkinson pulled off to the

side of the road of his own volition. It is also undisputed that

Detective Seymour was in an unmarked car, was not dressed in

uniform, and did not activate his lights or sirens. Detective

Seymour never questioned Mr. Atkinson about the burglaries, never

stated that Mr. Atkinson was under arrest, and, until instituting

the carotid restraint, did not touch Mr. Atkinson. Rather,

Detective Seymour identified himself as a peace officer and asked

to see some papers. In *United States v. Kim*, 25 F.3d 1426, 1430

(9th Cir. 1994), the Ninth Circuit held under similar

circumstances that an investigatory stop did not occur where a

law enforcement agent parked his car alongside, and partially

43

blocked, defendant's parked car, identified himself as a DEA

agent, and asked for identification. In *United States v. Summers*,

268 F.3d 683, 687 (9th Cir. 2001), the Ninth Circuit held that the

interaction between defendant and the police officer was

voluntary; defendant's car was parked and only partially blocked

by officer's squad car, nothing prevented defendant from leaving

the scene on foot, the officer never received proper

identification from defendant, the officer drove up to the scene

without activating his lights or siren, and defendant approached

officer immediately.

One fact creates an issue of material fact whether Mr.

Atkinson was seized: Detective Seymour allegedly ordered Mr.

Atkinson to remove his hands from his pocket. *United States v.*

*Manzo-Jurado*, 457 F.3d 928, 934 n.3 (9th Cir. 2006) (holding that

a police officer's order to occupants of a truck to "show their

hands" was a seizure).

Plaintiffs' counter-motion for summary adjudication that

until Defendant Seymour put Mr. Atkinson in a carotid restraint,

Mr. Atkinson was not seized and was free to leave the consensual

encounter, is DENIED.

2.   Excessive Force; Qualified Immunity

There are issues of material fact regarding whether

Detective Seymour used excessive force against Mr. Atkinson and

is entitled to qualified immunity. Plaintiffs' counter-motion for

44

summary adjudication that Detective Seymour used excessive force as a matter of law is DENIED.

### 3. Standing

Plaintiffs, Mr. Atkinson's parents, have fulfilled the procedural requirements of California Civil Procedure Code § 377.32 and have standing to assert claims as successors in interest to Mr. Atkinson. Plaintiffs' counter-motion for summary adjudication as to Plaintiffs' standing as successors-in-interest to Mr. Atkinson is GRANTED.

### C. Defendants' Ex Parte Application (Doc. 54-3)

Defendants submit an Ex Parte Application for permission to file a 26-page Reply in excess of the 10-page limit (Doc. 54-3), filed concurrently with Defendants' Reply (Doc. 54).

Defendants filed a 32-page Motion for Summary Judgment/ Adjudication (Doc. 41) without leave to exceed the 25-page limit for motions filed in the Eastern District of California. Plaintiffs filed a 29-page Opposition and Counter-Motion for Summary Adjudication of Issues (Doc. 48) without leave to exceed the 25-page limit for motions. Defendants' 26-page Reply (Doc. 54) was filed without prior leave 7 days before the filing date.

The Eastern District of California's Standing Order provides in pertinent part:

> Unless prior leave of court seven days before the filing date is obtained, all briefs or memoranda in civil cases shall not exceed 25 pages and briefs or memoranda in

45

1
2
3

criminal cases shall not exceed 10 pages. Reply briefs filed by moving parties shall not exceed 10 pages. Briefs that exceed this limitation or sought to be filed after the required time will NOT BE CONSIDERED.

4   (Doc. 4, ¶ 4). Counsel for both parties shall familiarize

5   themselves with, and adhere to, the Eastern District of

6   California's Local Rules and Standing Order, including the above

7   rule on page limits for legal briefs and memoranda.

8        Defendants' Ex Parte Application is GRANTED.

9

10                         IV.   <u>CONCLUSION</u>

11   For the reasons stated:

12    1. Defendants' Motion for Summary Judgment/Adjudication is

13       GRANTED in part and DENIED in part, as follows:

14          a. Defendants' motion for summary judgment due to

15             Plaintiffs' lack of standing is DENIED.

16

17          b. Defendants' motion for summary judgment on the First

18             Claim for Relief is GRANTED as to Plaintiffs' Fourth

19             Amendment claim for unreasonable detention and arrest

20             without probable cause and DENIED as to Plaintiffs'

21             Fourth Amendment excessive force claim.

22          c. Defendants' motion for summary judgment on the Second

23             Claim for Relief is GRANTED.

24

25          d. Defendants' motion for summary judgment on the Third

26             Claim for Relief is GRANTED.

27          e. Defendants' motion for summary judgment on the Fourth

28             Claim for Relief is DENIED.

f. Defendants' motion for summary judgment on the Fifth
   Claim for Relief is GRANTED as to direct negligence and
   DENIED as to *respondeat superior* negligence.

g. Defendants' motion for summary judgment on the Sixth
   Claim for Relief is DENIED.

h. Defendants' motion for summary judgment on the punitive
   damages claim is GRANTED as to Defendant County and
   DENIED as to Defendant Seymour.

2. Plaintiffs' Counter-Motion for Summary Judgment/Adjudication
   of the Issues is GRANTED in part and DENIED in part, as
   follows:

   a. Plaintiffs' motion for summary adjudication that the
      encounter was consensual until Defendant Seymour put
      Mr. Atkinson in a carotid restraint is DENIED.

   b. Plaintiffs' motion for summary adjudication that the
      carotid restraint constituted excessive force as a
      matter of law and Defendant Seymour is not entitled to
      qualified immunity is DENIED.

   c. Plaintiff's motion for summary adjudication that
      Plaintiffs have standing to bring claims as successors
      in interest to Mr. Atkinson is GRANTED.

3. Defendants' Ex Parte Application is GRANTED.

4. Defendants shall submit a proposed form of order consistent
   with this memorandum decision within five (5) days of

1        electronic service of this memorandum decision.

2    SO ORDERED.

3    DATED: May 18, 2011.

4                                    /s/ Oliver W. Wanger
                                    Oliver W. Wanger
5                               United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    48